**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **LOIS YATES,** | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO.** |
| | ) | |
| **v.** | ) | |
| | ) | ___1:18-cv-308-HSO-JCG___ |
| **DOLLAR TREE STORES, INC. and** | ) | |
| **DOLLAR TREE, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**COMPLAINT**

## I.   INTRODUCTION

Plaintiff, Lois Yates, files this Title III, ADA action, pursuant to 42 U.S.C. §12181, et. seq. In Count One of the Complaint, Plaintiff seeks to enjoin the Defendants to remove architectural barriers. In Count Two, Plaintiff seeks to enjoin Defendants to maintain practices, policies, and procedures necessary to maintain the premises free of architectural barriers both now and once the barriers are removed. In Count Three, Plaintiff seeks to enjoin the Defendants' use of the premises to provide full and equal enjoyment of the Dollar Tree environment to individuals with disabilities. Counts Two and Three seek independent relief in addition to the removal of architectural barriers. Count Four seeks to enjoin Defendants' failure to design and construct the establishment to be readily accessible to and usable by individuals with disabilities. Count Five seeks to enjoin Defendants to make their website accessible to the Plaintiff so that she is provided the full and equal services of the website. In Count Six, Plaintiff seeks to enjoin Defendants failure to take the necessary steps to ensure Plaintiff is not denied services, segregated or otherwise treated differently than other individuals who do not have disabilities through the use of the mobile

software applications.

## JURISDICTION, PARTIES, AND ARTICLE III STANDING

1.      Because this is an action for declaratory and injunctive relief pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §12181, et. seq., (hereinafter referred to as the "ADA") and its implementing regulations, this Court is vested with original jurisdiction under 28 U.S.C. §1331 and §1343.

2.      Venue is proper in this Court, the United States District Court for the Southern District of Mississippi, pursuant to Title 28, U.S.C. §1391 and the Local Rules of the United States District Court for the Southern District of Mississippi.

3.      Plaintiff, Lois Yates, has malignancy (more commonly known as "cancer") in addition to severe lung damage and chronic obstructive pulmonary disease. As a result, Ms. Yates requires the use of mobility aids for locomotion. The extent of Ms. Yates' physical disabilities limits her ability to care for herself, perform manual tasks, walk, stand, lift, bend, and work; all of which are major life activities pursuant to 42 U.S.C. § 12102 (2) (A). Ms. Yates is, accordingly, a person with a disability pursuant to the Americans with Disabilities Act, in that she has a physical impairment substantially limiting one or more major life activities.  42 U.S.C. § 12102; See also 28 C.F.R. § 36.104.

4.      Defendant, Dollar Tree Stores, Inc. (hereinafter "Dollar Tree"), is a corporation that is both registered to conduct business and is conducting business within the State of Mississippi sufficient to create both general and specific in personam jurisdiction. Upon information and belief, Dollar Tree Stores, Inc., "operates" the Dollar Tree retail store located at 2650 Beach Blvd, Biloxi, MS 39531. 42 U.S.C. § 12182. Dollar Tree is a place of public

accommodation pursuant to 42 U.S.C. § 12181(7).

5.      Defendant, Dollar Tree, Inc., (hereinafter, "DTI"), is a corporation that is conducting business within the State of Mississippi sufficient to create both general and specific *in personam* jurisdiction. Upon information and belief, Dollar Tree, Inc., "owns" the public internet website www.dollartree.com and the Dollar Tree mobile application and its goods and services offered on the mobile app, and "operates" the world-wide website services and mobile application services that are available to the public at Dollar Tree. It is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices, and procedures, and further, providing auxiliary aids and services to its web-based services and mobile application services. 42 U.S.C. § 12182.

6.      All events giving rise to this lawsuit occurred in the Southern District of Mississippi and Defendants are citizens thereof.

7.      Plaintiff Lois Yates resides in Biloxi and in proximity to the Dollar Tree retail store. She has been to Dollar Tree many times because she passes it on her way to and from her doctor's appointments at Merritt Health. Plaintiff has recently visited the Dollar Tree store, specifically and enjoys the broad, exciting mix of merchandise that includes trusted national and regional brands offered at Dollar Tree stores. She intends to continue going to Dollar Tree because she enjoys the extreme values. Plaintiff will return not only to shop at Dollar Tree, but also to confirm compliance with the ADA by Defendants. Plaintiff cannot provide a specific time and date upon which she will return to the retail store because she has not and should not be expected to engage in such definite future planning. Nevertheless, Plaintiff definitely intends to return to the retail store.

**8.** Because of the barriers described below in paragraph 22 and throughout the Complaint, Plaintiff has been denied full and equal enjoyment of the Defendants' premises on the basis of her disabilities.

**9.** Plaintiff accordingly, has Article III standing to pursue this case because (1) she is a person with a disability, pursuant to the statutory and regulatory definition; (2) the Defendants' retail store is a place of public accommodation, pursuant to the statutory and regulatory definition; (3) she has suffered a concrete and particularized injury, by being denied access to Dollar Tree by architectural barriers, by being denied access by the Defendants' practices described throughout this Complaint, and by Defendants' denial of the use of Dollar Tree for her full and equal enjoyment as the able-bodied, as described throughout the Complaint, and (4) because of these injuries, there exists a genuine threat of imminent future injury, as described in paragraph 20.

## II.      PLAINTIFF'S CLAIMS

**ADA, Title III**

**10.**      On or about July 26, 1990, Congress enacted Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12181 et.seq. Commercial enterprises were provided one and a half years from enactment of the statute to implement its requirements. The effective date of Title III of the ADA was January 26, 1992. (42 U.S.C. §12181; 20 C.F.R. §36.508 (A); *See also*, § 36.304).

**11.**      Pursuant to 42 U.S.C. § 12181(7) and 28 C.F.R. § 36.104, the Defendants' establishment is a place of public accommodation in that it is a retail store providing a broad, mix of merchandise to the public. Accordingly, it is covered by the ADA and must comply with the Act.

**COUNT ONE**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III**
**42 U.S.C. § 12182(b)(2)(A)(iv)**
*(Architectural Barriers)*

**Defendants' Existing Facility Is Subject to the 2010 ADA Design Standards for the Portions of the Facility Addressed in This Complaint**

12.     Plaintiff is informed and believes based on publicly available information that the building in which Dollar Tree is located at 2650 Beach Blvd, Biloxi, MS 39531 was first constructed in 2012.

13.     Plaintiff is further informed and believes based on publicly available information that the Dollar Tree retail store located at 2650 Beach Blvd, Biloxi, MS 39531 underwent alterations and/or improvements after 2012.

14.     The ADA was enacted requiring that facilities constructed prior to January 26, 1992, are considered an "existing" "facility, such that those facilities must remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). All "alterations" made to existing facilities after January 26, 1992, and all "new construction" after January 26, 1993, must be *readily accessible to and usable by individuals with disabilities*, including *individuals who use wheelchairs*. 42 U.S.C. § 12183(a) and (b). 28 *C.F.R.* § 36.402. "Readily accessible to and usable by. . ." is the "new construction" standard, which requires compliance with the Department of Justice standards. 42 U.S.C. § 12183(a)(1); 28  *C.F.R.* § 36.406. The only defense for failing to provide readily accessible and usable buildings constructed under the "new construction" standards is if the design and construction of the building to be readily accessible and usable is "structurally impracticable". 42 U.S.C. § 12183(a)(1). The "structural impracticability" defense applies only in rare circumstances of extraordinary terrain. 28 *C.F.R.* §

36.401(c). "Readily accessible to and usable by. . ." is also the "alterations" standard. 42 U.S.C. § 12183(a)(2). "Alterations" must be made to the maximum extent feasible.  42 U.S.C.  § 12183(a)(2); 28 *C.F.R.* § 36.402. An alteration is a change to a place of public accommodation or commercial facility that affects or could affect the usability of the facility or any part thereof. 28 *C.F.R.* § 36.402(b).

15.      New construction and alterations must comply with either the Justice Department's 1991 Standards for Accessible Design, or the 2010 Standards for Accessible Design. 28 *C.F.R.* § 36.406 establishes whether the 1991 Standards for Accessible Design or 2010 Standards for Accessible Design apply: New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 1991 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is before September 15, 2010, or if no permit is required, if the start of physical construction or alterations occurs before September 15, 2010. 28 *C.F.R.* § 36.406(a)(1). New construction and alterations subject to §§ 36.401 or 36.402 shall comply either with the 1991 Standards or with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after September 15, 2010, and before March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after September 15, 2010, and before March 15, 2012. 28 *C.F.R.* § 36.406(a)(2). New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after March 15, 2012. *Where the facility*

*does not comply with the 1991 Standards, the 2010 Standards are applicable.* See 28 C.F.R. § 36.406(5)(ii) which states, "Newly constructed or altered facilities or elements covered by §§ 36.401 or 36.402 that were constructed or altered before March 15, 2012 and that do not comply with the 1991 Standards shall, on or after March 15, 2012, be made accessible in accordance with the 2010 Standards."

16.     For the architectural barriers at issue in this case, the 2010 Standards for Accessible Design are applicable.

**Plaintiff's Concrete and Particularized Standing to Pursue an Injunction**

17.     The Defendants have discriminated, and continue to discriminate, against Plaintiff, and others who are similarly situated, by denying full and equal access to, and full and equal enjoyment of goods, services, facilities, privileges, advantages and/or accommodations at Dollar Tree in derogation of 42 U.S.C. § 12101 et. seq., and as prohibited by 42 U.S.C. § 12182 et-seq. As "new construction", the building must be readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183 (a) and (b). Defendants' failure to remove the existing barriers thus violates 42 U.S.C. § 12182(b)(2)(A)(iv), which requires removal of architectural barriers.

18.     As described above, prior to the filing of this lawsuit, Plaintiff was denied full and safe access to all of the benefits, accommodations and services offered to individuals without disabilities within and about the Defendants' establishment. Plaintiff's access was inhibited by each of the described architectural barriers detailed in this Complaint which remain at the establishment in violation of the ADA. Because of the foregoing, Plaintiff has suffered an injury-in-fact in precisely the manner and form in which the ADA was enacted to guard against.

19.    Plaintiff has definite plans to return to Dollar Tree in the future. She will return to Dollar Tree in both Fall 2018 and Spring 2019 both to shop and enjoy the broad, mix of merchandise, and to see if Dollar Tree has repaired the barriers, and changed their practices and procedures. Plaintiff will continue to do so even when Dollar Tree is repaired, because Dollar Tree is an enjoyable place. Plaintiff certainly would not want to stop going when Dollar Tree is repaired and their practices are modified, which gives her more incentive to go.  Also, and importantly, , the barriers are not only created by construction issues, but are also, created by human activity, based on the way Defendants' employees at the establishment use the physical architectural elements of the facility. The barriers created by human activity should be reviewed and maintained continuously, to be sure Defendants' management and employees continue to act in a manner that does not create barriers. Absent remedial action by Defendants, Plaintiff will continue to encounter the architectural barriers, and the discriminatory policies, practices, and procedures described herein, and, as a result, Plaintiff will be discriminated against by the Defendants on the basis of her disabilities. The Eleventh Circuit held in _Houston v. Marod Supermarkets_, 733 F.3d 1323 (11th Cir. 2013), when architectural barriers have not been remedied "_there is a 100% likelihood that plaintiff… will suffer the alleged injury again when plaintiff returns to the store._" Due to the definiteness of Plaintiff's future plans to continue visiting the subject establishment, there exists a genuine threat of imminent future injury.

**Architectural Barriers**

20.    Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

21.     Plaintiff has been from the entrance to the toilet rooms; the toilet rooms themselves; from the toilet rooms to the shopping retail aisles; the shopping retail aisles to the check-out area; throughout circulation paths and accessible routes, paths of travel, and in particular but not limited to all of which is more specifically described below. Moreover, Defendants' facility located at 2650 Beach Blvd, Biloxi, MS 39531, violates the ADA in the check-out area, shopping retail aisles area, toilet room, and in particular but not limited to:

A.  Defendants provide check-out counters for able-bodied individuals to transact business and otherwise receive services that are provided at each counter but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

(1)  There is not at least one of each type of check-out counter that is maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by individuals with disabilities. This has the discriminatory effects of rendering the counter, its associated elements, and services offered at the counter as unusable by individuals with disabilities;

(2)  Defendants maintain more than one check-out aisle, that are identified by numbers, letters, or functions, for individuals who are not disabled but fails to conform with the ADA Standards for Accessible design by maintaining in a readily usable check-out aisle that is identified by the International

Symbol of Accessibility in the same location as the check-out aisle identification which renders the entire check-out aisle as unusable by individuals with disabilities;

**(3)** There is not at least one of each type of check-out counter that is maintained in operable condition by conforming with the ADA Standards for Accessible Design so that the accessible counter and its associated elements are located adjacent to a walking surface complying with §403;

**(4)** Defendants fail to maintain the required clear floor space at the counter so that the floor space is at least 48 inches long x 30 inches wide and maintained adjacent to the 36-inch minimum length of counter that is otherwise accessible to and usable by individuals with disabilities;

**(5)** There is not  at least one of each type of check-out counter that is maintained in operable condition by conforming with the ADA Standards for Accessible Design so that a portion of the counter surface that is 36 inches long minimum and 36 inches high maximum above the finish floor is readily usable by individuals with disabilities, which includes maintaining a clear floor or ground space complying with §305 positioned for either a parallel approach adjacent to the 36 inch minimum length of counter, or, alternatively, A portion of the counter surface that is 30 inches long minimum and 36 inches high maximum with knee and toe space complying with §306 provided under the counter and a clear floor or ground space complying with 305 positioned for a forward approach to the counter;

**(6)** There is not at least one of each type of check-out counter that is maintained in operable condition with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by individuals with disabilities, which includes but is not limited to maintaining the clear counter surface free of obstructions or any other clutter that could have the discriminatory effects of rendering the counter and its associated benefits and services as unusable by individuals with disabilities;

**(7)** There is not at least one of each type of check-out counter that is maintained in operable condition with the ADA Standards for Accessible Design so that accessible counter extends the same depth as the non-accessible portion of the counter;

**(8)** There is not at least one of each type of check-out counter that is maintained in operable condition with the ADA Standards for Accessible Design so that a credit card payment terminal is positioned or otherwise maintained in a readily accessible to and independently usable location at the accessible counter which has the discriminatory effect in practice of affording individuals with disabilities an unequal opportunity to independently transact business in the same manner as individuals without disabilities;

**(9)** Defendants fail to maintain the accessible features of the check-out counter that are required to be readily accessible to and usable by individuals with disabilities;

**B.** Defendants provide an accessible route to and throughout the shopping retail aisles for able-bodied individuals but fails to provide an ADA accessible route to and throughout the shopping retail aisles for individuals with disabilities and therefore prohibits individuals with disabilities from the full and equal opportunity to access the goods and services at the Defendants' store, which includes but is not limited to the following failures of Defendants:

    **(1)** Throughout the accessible route there is merchandise that obstructs the required 36 inches of clear floor space on the accessible route which prohibits individuals with disabilities from having the same shopping experience as individuals without disabilities;

    **(2)** Defendants maintain merchandise boxes, small crates and employee carts in the accessible route and consequently obstructs the required clear floor or ground space of the accessible route which has a discriminatory effect in practice of prohibiting individuals with disabilities from the full and equal opportunity to maneuver throughout the Defendants' store;

    **(3)** Defendants fail to have, or otherwise fails to enforce, its policies, practices, or procedures on maintaining in operable working condition the features of the accessible route to and throughout the shopping retail aisles so that the goods and services are readily accessible to and usable by individuals with disabilities;

    **(4)** Defendants have ineffective policies, practices, or procedures that ensure the accessible route is readily accessible to and usable by individuals with

disabilities so that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals;

**C.** Defendants provide a toilet room for able-bodied individuals, but fails to afford individuals with disabilities the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

    **(1)** Defendants maintain items in the maneuvering clearance at the toilet room door which has the discriminatory effect in practice of prohibiting individuals with disabilities from the full and equal opportunity to maneuver independently throughout the toilet room;

    **(2)** The trash can projects into the required maneuvering clearance on the latch side of the door;

    **(3)** The toilet room door locking mechanism fails to be maintained in conformance with the ADA Standards for Accessible Design so that the lock does not require tight grasping, twisting, and/or pinching of the wrist;

    **(4)** The toilet room fails to be maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by individuals with disabilities, which has the discriminatory effects of rendering the water closet and its associated elements as unusable by individuals with disabilities;

    **(5)** The toilet room fails to maintain at least one ADA accessible water closet in operable condition by conforming with the ADA Standards for

Accessible Design so that the center line of the water closet is located 16-18 inches from the side wall with the top of the water closet seat surface 17-19 inches above the finished floor and otherwise readily accessible to and usable by individuals with disabilities;

**(6)** The clear floor space around the water closet fails to be maintained in conformance with the ADA Standards for Accessible Design so that the lavatory sink and/or other associated obstructions are not restricting the water closets usability by individuals with disabilities;

**(7)** The toilet paper dispenser fails to be properly maintained in conformance with the ADA Standards for Accessible Design so that the dispenser is located 7-9 inches from the front of the water closet;

**(8)** Defendants maintain the toilet paper on top of the dispenser rather than in the toilet paper dispenser which has the discriminatory effect in practice of prohibiting individuals with disabilities from the full and equal opportunity to use the toilet paper;

**(9)** The side wall grab bar fails to conform to the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by individuals with disabilities, which includes but is not limited to maintaining a 42 inch long grab bar that is located a maximum of 12 inches from the rear wall and extending a maximum distance of 54 inches from the rear wall, with the top gripping surface of the grab bar 33-36 inches above the finished floor;

**(10)** The rear wall grab bar fails to conform to the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by individuals with disabilities, which includes but is not limited to maintaining a 36 inch long grab bar installed so that it is located 12 inches on the closed side of the toilet room and 24 inches on the transfer side and mounted so that the top gripping surface measures 33-36 inches above the finished floor;

**(11)** The rear wall grab bar fails to conform to the ADA Standards for Accessible Design so that the grab bar complys with the applicable standards and so that the gripping surface of the grab bar is not obstructed;

**(12)** Defendants fail to maintain the accessible features of the toilet room that are required to be readily accessible to and usable by individuals with disabilities;

**D.** Defendants provide a lavatory for able-bodied individuals, but fails to afford individuals with disabilities the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

**(1)** The lavatory fails to be maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by individuals with disabilities, which has the

discriminatory effect of rendering the lavatory sink and its associated elements as unusable by individuals with disabilities;

**(2)** There is not at least one ADA accessible lavatory that is maintained in a usable condition so that the top surface of the rim on the lavatory sink measures a maximum of 34 inches above the finished floor and positioned for a forward approach;

**(3)** The clear floor space at the lavatory sink fails to be maintained in conformance with the ADA Standards for Accessible Design so that the knee and toe clearance is not restricting the usability by individuals with disabilities;

**(4)** The automatic hand dryer fails to be maintained in a usable condition so that the dryer and its operable parts measure a maximum of 48 inches above the finished floor;

**(5)** The clear floor space at the automatic hand dryer fails to be maintained in conformance with the ADA Standards for Accessible Design so that the knee and toe clearance is not restricting the usability by individuals with disabilities;

**(6)** Defendants maintain items in the clear floor space at the automatic hand dryer which has the discriminatory effect in practice of prohibiting individuals with disabilities from the full and equal opportunity to approach the dryer independently;

(7) There is not at least one lavatory with a mirror that is maintained in a usable condition so that the bottom reflecting surface of the mirror measures a maximum of 40 inches above the finished floor;

(8) There is not at least one lavatory with a soap dispenser that is maintained in a usable condition so that the dispenser does not require the use of two hands to operate and/or require tight grasping, twisting, and/or pinching of the wrist;

(9) There is not at least one lavatory with a soap dispenser that is maintained in a usable condition so that the dispenser measures a maximum of 48 inches above the finished floor;

22.     To date, the barriers to access and other violations of the ADA still exist and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the ADA.

23.     Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. She is entitled to have her reasonable attorney's fees, costs and expenses paid by the Defendants pursuant to 42 U.S.C. §12205.

24.     Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff's injunctive relief, including an Order to alter the discriminating facility to make it readily accessible to, and usable by, individuals with disabilities to the extent required by the ADA, and closing the facility until the requisite modifications are completed, and to further order the Defendants to modify their policies, practices, and procedures, to provide equal use of their facilities, services and benefits to individuals with disabilities.

**COUNT TWO**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III**
**42 U.S.C. § 12182(b)(2)(A)(ii)**
*(Practices, procedures, and policies denying equal benefits)*

**ADA Title III Prohibits Other Discrimination in Addition to Architectural Barriers**

25.     Plaintiff incorporates by reference and re-alleges all of the paragraphs above.

26.     The ADA, Title III, provides a private right of action for "any person who is being subjected to discrimination on the basis of disability in violation of" Title III. 42 U.S.C. § 12182(a)(1) (emphasis added).

27.     The ADA, Title III, specifically makes it unlawful to provide individuals with disabilities with an "unequal benefit," and to relegate individuals with disabilities to a "different or separate" benefit. 42 U.S.C. §§ 12182(b)(1)(A))(ii)-(iii); 28 C.F.R. § 36.202(b)-(c). In other words, individuals with disabilities must receive equal benefits as the individuals without disabilities. Further, 28 C.F.R. § 302(b) requires that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs and mobility aids have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs and mobility aids historically have been provided "segregated accommodations" compared to individuals who are not disabled, thus relegating persons who use wheelchairs "to the status of second-class citizens." See 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§ 36.308, 36.203).

28.     Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion,

the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities."  42 U.S.C. § 12101(a)(5).

29.     To address this broad range of discrimination in the context of public accommodations, Congress enacted ADA, Title III, which provides in part: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. 12182.

30.     By its clear text, ADA, Title III requires a public accommodation to provide individuals with disabilities *more than simple physical access.* Removal of architectural barriers as required by Count One of this Complaint is but one component of compliance with ADA, Title III. Congress recognized that "individuals with disabilities continually encounter various forms of discrimination" including not only barriers to physical access, but also other forms of exclusion and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

31.     For that reason, the Act applies not only to barriers to physical access to places of public accommodation, but also to any policy, practice, or procedure that operates to deprive or diminish individuals with disabilities' full and equal enjoyment of the privileges and services offered by the public accommodation to the public. 42 U.S.C. § 12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(2)(A)(ii). The Eleventh Circuit held in *Rendon v. Valleycrest Prod., Ltd.* 294 F.3d 1279, (11th Cir. 2002) that:

> *"A reading of the plain and unambiguous statutory language at issue reveals that the definition of discrimination provided in Title III covers both <u>tangible barriers</u> (emphasis added), that is, physical and architectural barriers that would prevent a disabled person from entering an accommodation's facilities and accessing its goods, services and privileges, see 42 U.S.C. § 12182(b)(2)(A)(iv), and <u>intangible barriers</u> (emphasis added), such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the Defendants entity's goods, services and privileges."*

## Defendants' Failed Practices and Lack of Policies Are Discriminatory

32.     Pursuant to 42 U.S.C. § 12182(b)(2)(A)(ii) discrimination includes:

> *"a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations*."

33.     Accordingly, a place of public accommodation must modify a policy or practice that has the consequence of, or tends to deny, access to goods or services to individuals with

disabilities. Similarly, a place of public accommodation must not have a policy or practice that "has a discriminatory effect in practice" of preventing individuals with disabilities from realizing the full and equal enjoyment of the goods and services the public accommodation offers to potential customers. *Nat'l Fed'n of the Blind v. Scribd Inc.*, 97 F.Supp.3d 565 (D. Vt. 2015).

34.    As detailed below, Defendants have failed to make reasonable modifications in their policies, practices, and procedures that are necessary to afford their goods, services, facilities, privileges, advantages, or accommodations to individuals with restricted mobility. By failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, Defendants denied services, segregated or otherwise treated Plaintiff differently than other individuals who are not disabled. Pursuant to 42 U.S.C. § 12182(b)(2)(A), Defendants have discriminated against Plaintiff. Defendants will continue that discrimination forever until enjoined as Plaintiff requests. The discrimination is described more particularly in the following paragraphs.

35.    Defendants either have no policies, practices, and procedures to remove architectural barriers or else they do not abide by them. The rampant architectural barriers previously identified in Count One establish that Defendants have failed to create, adopt, and/or implement ADA Title III compliance policies, procedures, and practices as to architectural barriers.

36.    Defendants' use of the establishment, and practices at the establishment located at 2650 Beach Blvd, Biloxi, MS 39531, literally create barriers and in so doing denys Plaintiff the full and equal enjoyment of the establishment. Those practices include:

>    **A.** Defendants fail to provide an accessible route to and throughout the establishment that is accessible to individuals with disabilities, which

means that Plaintiff cannot travel and move into or throughout the establishment in the same way as individuals without disabilities. Accordingly, she cannot fully and equally use and access Dollar Tree and all of its goods and services as the people who are not disabled can;

**B.** Defendants make the check-out counters in the check-out area inaccessible for use by customers with disabilities by failing to provide either a parallel or a forward approach to the counter, which means Ms. Yates cannot fully and equally use the counter to transact business in the way the individuals without disabilities do, because individuals without disabilities have a counter they can use to transact business;

**C.** Point of sale machines at the sales and service counter in the store area are located so as to be inaccessible, which denies Ms. Yates the ability to equally use those machines as the individuals who are not disabled, who can independently use the point of sale machines to pay for their purchases;

**D.** Defendants fail to provide any signage throughout the check-out area displaying the International Symbol of Accessibility identifying check-out areas as ADA accessible;

**E.** Defendants make their toilet facilities inaccessible for use by individuals with disabilities by failing to maintain any ADA accessible elements within the toilet rooms so that Plaintiff is afforded the opportunity to independently use the toilet room and all of its elements and fixtures, or move into and throughout the toilet room, whereas individuals without disabilities are able

to independently use the toilet rooms;

F.  Defendants fail to provide a description of the accessible features of Dollar Tree for individuals with disabilities, which means Plaintiff cannot independently use the website to fully and equally evaluate the features of Dollar Tree in the same way as individuals without disabilities;

G.  Defendants fail to provide a mobile web platform that enables voice recognition software and other assistive touch technologies for individuals with disabilities to receive the same services through the mobile app as the services received by individuals without disabilities;

H.  Defendants' policies, practices, and procedures are conducted without regard to individuals with disabilities;

37.     As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendants have no policies, practices, or procedures, or else they have failed to implement them, to ensure that any removal of architectural barriers is permanent. 42 U.S.C. § 12182(b)(2)(a)(iv) and (v).

38.     As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendants' existing practice is both in effect and/or explicitly to remediate ADA Title III architectural barriers only upon demand by individuals with disabilities.

39.     As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendants have no policies, practices, and procedures or have failed to create, implement and maintain policies and procedures to ensure individuals with disabilities are

able to have the same experience at their facilities as individuals without disabilities, 42 U.S.C. 12182(b)(1)(A).

40.    As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendants have failed to create, implement, and maintain a policy of complying with ADA building design standards and regulations.

41.    To date, the Defendants' discriminating policies, practices, and/or procedures have not been reasonably modified to afford goods, services, facilities, privileges, advantages, or other accommodations to individuals with disabilities.

42.    A reasonable modification in the policies, practices, and procedures described above will not fundamentally alter the nature of such goods, services, facilities, privileges, advantages, and accommodations. The Plaintiff hereby demands that Defendants both create and adopt a corporate practice and policy that Defendants (1) will fully comply with Title III, ADA, and all its implementing regulations so that architectural barriers identified above are permanently removed from Defendants' establishment consistent with the ADA; (2) Defendants will provide individuals with disabilities, including those with mobility impairments, full and equal use and enjoyment of  Dollar Tree; (3) Defendants will modify their practice of making ADA Title III architectural barrier remediations only upon demand by individuals with disabilities.

43.    Dollar Tree Stores Inc., "operates" the Dollar Tree retail store located at 2650 Beach Blvd, Biloxi, MS 39531, and is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, as alleged above.

44.    The ADA has been in effect over twenty-five (25) years. Defendants are aware of their obligation to comply with the ADA Title III, which requires modifications in policies,

practices, and procedures. 42 U.S.C. §12182(b)(2)(A)(ii).

45.    Plaintiff, herein, provides sufficient notice of her demands for an alteration in Defendants' policies, practices, and procedures.

46.    Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. She is entitled to have her reasonable attorney's fees, costs and expenses paid by the Defendants pursuant to 42 U.S.C. § 12205.

47.    Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal policies, practices, and procedures.

### COUNT THREE
### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
#### *(Denial of Full and Equal Enjoyment)*

48.    Plaintiff incorporates by reference and re-alleges all of the paragraphs above.

49.    42 U.S.C. § 12182(a) provides:

> *"No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."*

50.    Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms for discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

51.    Congress also found that: "*individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and*

*policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities,* 42 U.S.C. § 12101(a)(5); "*the nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals;*" 42 U.S.C. § 12101(a)(7). Congress even found that: "*the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.*" 42 U.S.C. § 12101(a)(8).

52.   In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressed discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1)-(2).

53.   The ADA provides, inter alia, that it is discriminatory to subject an individual or class of individuals on the basis of a disability "to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(a)(i).

54.   The ADA further provides that it is discriminatory "to afford an individual or class of individuals, on the basis of a disability ... with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded

to other individuals." 42 U.S.C. § 12182(a)(ii).

55.     Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. 12101(a)(5). Defendants' acts and omissions alleged herein are in violation of the ADA, 42 U.S.C. §§ 12101, et seq., and the regulations promulgated thereunder.

56.     To address this *broad* range of discrimination in the context of public accommodations, Congress enacted Title III, which by its clear text, requires a public accommodation to provide individuals with disabilities more than simple physical access. Congress recognized that "individuals with disabilities continually encounter *various forms of discrimination*" including not only barriers to physical access, but also other forms of exclusion and *relegation to lesser services, programs, activities, benefits, jobs, or other opportunities*. 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

57.     The Act applies not only to barriers to physical access to business locations, but also to any policy, practice, or procedure that operates to deprive or diminish to individuals with disabilities

the *full and equal enjoyment* of the privileges and *services* offered by the public accommodation to the public. 42 U.S.C. 12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(1)(A)(i).

58. The keystone for this analysis is Defendants *must start by considering how their facilities are used by non-disabled guests and then take reasonable steps to provide disabled guests with a like experience.* Spector v. Norwegian Cruise Line Ltd., 545 U.S. 119, 128–29, 125 S.Ct. 2169, 162 L . E d . 2d 97 (2005) See also, Baughman v. Walt Disney World Company, 685 F.3D 1131, 1135 (9th Cir. 2012).

59. Plaintiff, Lois Yates, was denied full and equal access to Dollar Tree. Plaintiff specifically and definitely wants to return to the Defendants' establishment to enjoy the broad, mix of merchandise that is the Dollar Tree experience. More specifically, Plaintiff wants to be afforded the same level of service that is offered to individuals who are not disabled, but which Defendants have failed to provide to Plaintiff as follows: Defendants failed to provide an accessible route to and throughout the establishment for individuals with disabilities, which means Plaintiff cannot independently travel into and move throughout the establishment; Defendants failed to provide Plaintiff that same experience that individuals who are not disabled have when shopping at Dollar Tree; Defendants failed to provide an equal experience by making it nearly impossible for individuals with disabilities to access the check-out counter in the check-out area, while the individuals who are not disabled can independently access the counter and services provided at the counter; Defendants failed to provide an accessible toilet room for individuals with disabilities, which means that, unlike the able-bodied, individuals with disabilities are challenged or denied the opportunity to independently use the toilet room and its fixtures and elements and, move

throughout the toilet room; Defendants failed to maintain accessible signage so that, individuals with disabilities do not know what route and what paths of travel are usable by individuals with disabilities; Defendants' failure to identify by signage what features are accessible causes individuals with disabilities to be inferior, segregated or otherwise treated differently, because unlike the individuals who are not disabled, individuals with disabilities are forced to resort to trial and error to determine what elements are useable. Defendants' continued failure to maintain ADA accessibility as an integral part of the highest possible shopping experience has segregated or otherwise treated Plaintiff and others similarly situated differently, in that, Dollar Tree makes Plaintiff dependent on family or an independent third party which is not the same shopping experience that Dollar Tree affords to individuals who are not disabled. The foregoing failures by Defendants inhibited Plaintiff from having the same experience that individuals who are not disabled have when at Dollar Tree.

60.    In its Preamble to the title III regulation, the Department of Justice recognized that mobility impaired persons including persons in wheelchairs should have the same opportunities to enjoy the goods and services and other similar events of public accommodation with their families and friends, just as other individuals who are not disabled do. The DOJ further recognized that providing segregated accommodations and services relegates persons with disabilities to the status of *second-class citizens*. 28 C.F.R. pt. 36, App. B, § 36.203.

61.    The ADA specifically makes it unlawful to provide individuals with disabilities with an "unequal benefit," and to relegate individuals with disabilities to a "different or separate" benefit. 42 U.S.C. §§ 12182(b)(1)(A) )(ii)-(iii); 28 C.F.R. § 36.202(b)-(c). Further, 28 C.F.R. § 302(b) requires that goods, services, and accommodations be provided to individuals with

disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. §

36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs

have been forced to sit apart from family and friends, also recognizes that persons who use

wheelchairs historically have been provided "inferior seating" and "segregated accommodations"

compared to individuals who are not disabled, thus relegating persons who use wheelchairs "to

the status of second-class citizens." See 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000)

(discussion of §§ 36.308, 36.203).

62.     Thus, Defendants' "use" of the accessible features constitutes statutory

discrimination in violation of the ADA, because Defendants have segregated and separated

individuals with disabilities from the individuals without disabilities. "*The goal is to eradicate the*

*invisibility of the handicapped. Separate-but-equal services do not accomplish this central goal*

*and should be rejected.*" *H.R. Rep. No. 101-485(III), at 50, 1990 U.S.C.C.A.N at 473.* The ADA

provides a "broad mandate" to "eliminate discrimination against inidividuals with disabilities, and

to integrate those individuals into the economic and social mainstream American life. *PGA Tour,*

*Inc. v. Martin*, 532 U.S. 661, 675, 121 S.Ct.1879, 149 L.Ed.2d 904 (2001) (*quoting H.R.Rep. No.*

*101-485, pt. 2, p.50 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 332*).

63.     Defendants discriminated against Plaintiff by denying Plaintiff "full and equal

enjoyment" and use of the goods, services, facilities, privileges and accommodations of the facility

during each visit. Each incident of deterrence denied Plaintiff an equal "opportunity to participate

in or benefit from the goods, services, facility, privilege, advantage, or accommodations" of Dollar

Tree.

64.     Defendants' conduct and Defendants' unequal treatment of Plaintiff constitute continuous violations of the ADA and absent a Court ordered injunction from doing so, Defendants will continue to treat Plaintiff and others similarly situated unequally.

65.     Defendants' failure to maintain the accessible features that are required to be readily accessible to and usable by individuals with disabilities constitute continuous discrimination and absent a Court ordered injunction, Defendants will continue to fail to maintain the required accessible features at Defendants' facility.  28 C.F.R.§ 36.211(a).

66.     Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. She is entitled to have her reasonable attorney's fees, costs and expenses paid by the Defendants pursuant to 42 U.S.C. § 12205.

67.     Pursuant to 42 U.S.C. § 12188, this Court is authorized to enjoin these illegal acts of the Defendants.

## COUNT FOUR
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### 42 U.S.C. § 12182(a)
### *(Failure to design and construct facility for ADA compliance)*

68.     Plaintiffs incorporate by reference and reallege all the paragraphs above.

69.     42 U.S.C. § 12183(a)(1) provides:

> *[Discrimination includes] a failure to design and construct facilities for first occupancy later than 30 months after July 26, 1990, that are readily accessible to and usable by individuals with disabilities, except where an entity can demonstrate that it is structurally impracticable to meet the requirements of such subsection in accordance with standards set forth or incorporated by reference in regulations issued under this subchapter.*

**70.**     Congress passed the ADA in part because "historically, society has tended to isolate and segregate individuals with disabilities, and such forms of discrimination ... continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2). Congress found that this discrimination included "segregation and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." Id. § 12101(a)(5). In its Preamble to the title III regulation, the Department of Justice recognized that persons in wheelchairs should have the same opportunities to enjoy the goods and services and other similar events of a public accommodation with their families and friends, just as individuals who are not disabled do. The DOJ further recognized that providing segregated accommodations and services relegates persons with disabilities to the status of *second-class citizens*. 28 C.F.R. pt. 36, App. B, § 36.203.

**71.**     To eliminate such segregation Congress enacted the requirement that facilities be "readily accessible to and usable by individuals with disabilities". This very requirement is intended to enable persons with disabilities "*to get to, enter and use a facility.*" H.R. Rep. No. 101-485(III), at 499-500 (1990). It requires "a high degree of convenient accessibility," id., as well as access to the same services that are provided to members of the general public. "For new construction and alterations, the purpose is *to ensure that the service offered to persons with disabilities is equal to the service offered to others*." *Id.*

**72.**     As the legislative history makes clear, the ADA is geared to the future-- the goal being that, over time, access will be the rule rather than the exception. Thus, the ADA only requires modest expenditures to provide access in existing facilities, *while requiring all new construction to be accessible.* H.R. Rep. 485, Part 3, 101st Cong., 2d Sess. 63 (1990).

73.     To realize its goal of a fully accessible future, Congress required that all newly constructed facilities be designed and constructed according to architectural standards set by the Attorney General. 42 U.S.C. §§ 12183(a), 12186(b). Those Standards for Accessible Design ("Standards") are incorporated into the Department of Justice's regulation implementing title III of the ADA, 28 C.F.R. Part 36, Appendix A. The Standards set architectural requirements for newly constructed buildings that apply to all areas of the facility, from parking areas, interior walkways and entrances, common areas, interior stairways and elevators, restrooms, dressing rooms and sales/service areas.

74.     Defendant, Dollar Tree Stores, Inc., "operates" the Dollar Tree store located at 2650 Beach Blvd, Biloxi, MS 39531, and at all relevant times was and is directly involved in the designing and/or construction of the applicable facilities in this litigation for first use after January 1993.

75.     Defendants were and are required to design and construct Dollar Tree to be "readily accessible to and usable by individuals with disabilities." Defendants violated the statute by failing to design and construct *their applicable facilities to be* readily accessible to and usable by individuals with disabilities including individuals who use wheelchairs. Defendants further violated the statute by failing to design and construct their establishment in compliance with the ADA during planned alterations as described herein.

76.     According to Defendants' own publicly available information, Defendants chose to design their facility in a way that is not ADA Title III compliant whatsoever. Defendants literally strategically designs, constructs and maintains their facility without any regard to the individuals with disabilities. Defendants' systematic design of their applicable facility fails to afford

individuals with disabilities the same experience that is afforded to individuals without disabilities.

**77.**     To date, the Defendants' discriminating actions continue.

**78.**     Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. She is entitled to have her reasonable attorney's fees, costs and expenses paid by the Defendants pursuant to 42 U.S.C. § 12205.

Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal actions by the Defendants.

## COUNT FIVE
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
## 42 U.S.C. § 12182(a)
### *(Failure to Integrate Website Accessibility)*

**79.**     Plaintiff incorporates by reference and re-alleges all the paragraphs above.

**80.**     The ADA's legislative history provides that integration is fundamental to the purposes of the ADA. Provision of segregated accommodations, goods and services relegate persons with disabilities to be an inferior second-class citizen. *H. Rep. 101–485(III), 101st Cong., *1279 2d Sess., at 56, reprinted in 1990 U.S.C.C.A.N. 445, 479.* "*The goal is to eradicate the invisibility of the handicapped. Separate-but-equal services do not accomplish this central goal and should be rejected.*" *Id. at 50, 1990 U.S.C.C.A.N. at 473.*

**81.**     Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services,

programs, activities, benefits, jobs, or other opportunities."  42 U.S.C. 12101(a)(5).

82.    Legislative history indicates that websites of public accommodations are covered by Title III. Although the internet did not exist when Congress enacted the ADA in 1990, the legislative histories state that Congress intended to include the use of new and evolving technologies by public accommodations and other covered entities in meeting their ADA obligations.  Consequently, it is consistent with Congressional intent to include within Title III's coverage the goods and services provided by public accommodations through their websites.  *See Nat'l Fed'n of the Blind v. Scribd*, 97 F.Supp. 3d 565, 574 (D. Vt. 2015).

83.    The Justice Department has long affirmed the application of Title III to the websites of public accommodations. *The statute's broad and expansive nondiscrimination mandate reaches goods and services provided by covered entities on Web sites over the Internet."* 75 Fed Reg. 43,460, 46,463 See also *Netflix,* 869 F. Supp. 2d at 200 *(excluding web-based services would "run afoul of the purposes of the ADA and would severely frustrate Congress's intent that individuals with disabilities fully enjoy the goods, services, privileges, and advantages available indiscriminately to other members of the general public." Carparts Distribution Center, Inc. v. Automotive Wholesaler's Association of New England, Inc.,* 37 F.3d 12, 20 (1st Cir. 1994).

84.    Today, internet technology enables individuals to participate actively in their community and engage in virtually all forms of commerce from the comfort and convenience of their homes. Virtual reality through the internet is almost as important as physical reality in brick-and-mortar constructed facilities in engaging in commerce from public accommodations. That websites were not explicitly written into the ADA at its passage in the early 1990s but are nevertheless covered does not indicate ambiguity in the ADA, but rather the breadth of the

ADA. *Andrews v. Blick Art Materials, LLC*, No. 17-CV-767, 2017 WL 3278898, (E.D.N.Y. Aug. 1, 2017).

85.     The design of Defendants' web site impedes Plaintiff and others similarly situated from accessing the services, privileges and accommodations afforded able-bodied patrons through the web platform. The website fails to integrate alternative access methods that allow a person with limited manual dexterity to access the information and navigate the web site without being able to use a mouse. That is, the website design does not provide for functions to be carried out using a keyboard or voice input. On their website, Defendants provide a plethora of services and associated benefits, including but not limited to: Dollar Tree retail store locators, deals, Value Seekers Club account access and benefits, among other services to the general public, but fails to provide those same services to persons with disabilities. Such actions relegate and otherwise segregate persons with disabilities to inferior benefits and services offered by Dollar Tree.

86.     Intangible barriers to access are prohibited, just as tangible barriers are prohibited.

87.     The actions by the Defendants violate the following statutory and regulatory provisions of the ADA:

> **A.** 42 U.S.C. § 12182(a), because their actions deny Plaintiff full and equal enjoyment of Defendants' goods and services;
>
> **B.** 42 U.S.C. § 12182(b)(1)(A)(i), because Defendants' actions deny Plaintiff equal participation in goods and services offered by the Defendants;
>
> **C.** 42 U.S.C. § 12182(b)(1)(A)(ii) and (iii), because Plaintiff is provided both separate and unequal benefits of the Defendants' goods and services;
>
> **D.** 42 U.S.C. § 12182(b)(1)(B), because the Defendants do not provide their

goods and services in the most integrated setting appropriate;

E.   28 C.F.R. 36.303(c), because Defendants have failed to provide auxiliary aids and services where necessary to ensure effective communication with the Plaintiff.

88.   Plaintiff does not allege that there are a particular set of mandatory regulations which establish specific standards for website compliance. as a matter of law. Plaintiff submits that consistent with the Department of Justice determinations, in order to achieve such conformance and usability of websites by individuals with disabilities, Defendants should rely upon the User Agent Accessibility Guidelines ("UAGG") 1.0, the Authorizing Tool Accessibility Guidelines ("ATAG") 2.0, and the Guidance on Applying WCAG 2.0 to Non-Web Information and Communications Technologies ("WCAH2ICT"), published by the W3C, as well as guidance published by the W3C's Mobile Accessibility Task Force, as stated guidance published by the W3C's Mobile Accessibility Task Force.

89.   To date, the Defendants' discriminating actions continue.

90.   Defendant, Dollar Tree, Inc., is the "owner" of the public internet website www.dollartree.com and "operates" the world-wide websites services that are available to the public at Dollar Tree. Defendant, therefore, is responsible for the design and maintenance of the website.

91.   Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. She is entitled to have her reasonable attorney's fees, costs and expenses paid by the Defendants pursuant to 42 U.S.C. § 12205.

92.     Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal actions by the Defendants.

### COUNT SIX
### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III
### 42 U.S.C. § 12182(2)(A)(iii)
*(Failure to Provide Mobile Application Accessibility)*

93.     Plaintiff incorporates by reference and re-alleges all the paragraphs above.

94.     The ADA was the most sweeping civil rights legislation since the Civil Rights Act of 1964. When it was enacted Congress had no conception of how the Internet would change global commerce. "[W]e were not communicating by e-mail, blog, or tweet; we were not filling virtual shopping carts with clothes, books, music, and food; we weren't banking, renewing our driver's licenses, paying taxes or registering for and taking classes online. Congress could not have foreseen these advances in technology which are now an integral part of our daily lives. Yet Congress understood that the world around us would change and believed that the nondiscrimination mandate contained in the ADA should be broad and flexible enough to keep pace." *Achieving the Promises of the Americans with Disabilities Act in the Digital Age—Current Issues, Challenges and Opportunities: Hearing before the H. Subcomm. on the Constitution, Civil Rights, and Civil Liberties of the House Comm. on the Judiciary,* 111th Cong., 2d Sess. 111–95 (2010).

95.     Since the internet plays such a critical role in the personal and commercial lives of Americans, excluding persons with disabilities from access to covered entities that use the internet and mobile applications as a means of reaching the public would defeat the purpose of this important civil rights legislation. In today's society, places of public accommodation are increasingly using mobile applications ("mobile apps") to provide services, benefits and goods

more effectively to the public and expand the services the public accommodation has to offer in new ways. These services that are provided by public accommodations through web applications, mobile applications, and hybrid applications ("mobile platform") also should be provided to individuals with disabilities.

96.    ADA Title III states that discrimination includes "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden." 42 U.S.C. § 12182(b)(2)(A)(iii). Regulations promulgated by DOJ implementing Title III require public accommodations to provide "appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1). Auxiliary aids and services include . . . *accessible electronic and information technology*, among other methods.  28 C.F.R. § 36.303(b). Auxiliary aids and services also include acquisition or modification of equipment or devices, and other similar services and actions, which would allow a person with a disability to, not only receive communications from a public accommodation, but would also permit that person to interact with and participate in programs which are often available on a mobile platform only.  28 C.F.R. 36.303(b)(3)-(4).

97.    The plain language of these statutory provisions applies to discrimination in offering the goods and services ''of'' a place of public accommodation or the services, programs, and activities ''of'' a public entity, rather than being limited to those goods and services provided

''at'' or ''in'' a place of public accommodation or facility of a public entity.

98.     Since the enactment of the ADA and its corresponding regulations for Title III, both the statute and regulations have always required that public accommodations provide effective communication to persons with disabilities through the provision of auxiliary aids and services. A commercial transaction between a customer and a public accommodation requires communication and interaction between the two. Defendants have chosen to provide a service through a mobile application to locate Dollar Tree retail stores, view the ads & catalogs, purchase merchandise in bulk, enjoy Value Seekers Club account access and benefits, among many other services. The Defendants furnish all of these services and features to able-bodied individuals. Yet, Defendants' use of and design of their mobile application and the services it offers through the application do *not* effectively communicate and provide services to individuals with disabilities. This is contrary to the broad mandate of the ADA which prohibits not only outright exclusion but also unnecessary differential treatment. See 42 U.S.C. §§ 12182(a), (b)(1)(A), (b)(2)(A)(iii). Congress expressly stated when passing the ADA, "…*the types of accommodations and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times[,]" and that technological advances "may require public accommodations to provide auxiliary aids and services in the future which today would not be required because they would be held to impose undue burdens on such entities*." *See* H.R. Rep. No. 485, pt. 2, at 108 (1990).

99.     The unlawful implementation of eligibility criteria in other contexts that are clearly covered by the Act is analogous to the Defendants' effective screening of Plaintiff from using their mobile app. For example, there is no question that the administration of admission testing by a

private secondary school falls within the scope of Title III. See 42 U.S.C.Section 12189; 28 C.F.R. 36.309. There would be little question that the ADA would apply, and would be violated, if Defendants screened guests as they entered, sending home guests on the grounds that they had disabilities such as deafness, or physical impairments or had diabetes or any other disability. See 28 C.F.R. Pt. 36 App. B, p. 640 (commentary to 28 C.F.R. 36.301) ("*It would violate this section to establish exclusive or segregative eligibility criteria that would bar, for example, all persons who are deaf from playing on a golf course or all individuals with cerebral palsy from attending a movie theater.*"). ("*An insurance company can no more refuse to sell a policy to a disabled person over the Internet than a furniture store can refuse to sell furniture to a disabled person who enters the store'. Accordingly, the site of the sale is irrelevant. All that matters is whether the good or service is offered to the public.* (*Nat'l Fed'n of the Blind. Scribd Inc.,*__ 97 F. Supp. 3d 565 (D. Vt. 2015). The Defendants' failure to design their mobile platform in order to permit access by persons using assistive technology directly and physically screens and prevents the Plaintiff from being able to use the mobile app, just as if Defendants in their retail store placed items outside the Plaintiff's reach or placed a flight of stairs at the front door without a ramp.

100. In our contemporary technological society, "excluding businesses that sell services through the Internet from the ADA would 'run afoul of the purposes of the ADA and would severely frustrate Congress's intent that individuals with disabilities fully enjoy the goods, services, privileges, and advantages available indiscriminately to other members of the general public." *Netflix,* 869 F.Supp.2d at 200 (quoting *Carparts,* 37 F.3d at 20). (quoting *Nat'l Fed'n of the Blind. Scribd Inc.,* 97 F. Supp. 3d 565 (D. Vt. 2015).

**101.** Defendants' actions diminish Plaintiff's rights under the ADA to fully participate in all aspects of society, which is counter to Congress' goal. Defendants' ableism, as described herein, is excluding Plaintiff from equality of opportunity, full participation, independent living, and economic self-sufficiency and in doing so excludes Plaintiff from a plethora of goods and services that are offered through the mobile platform which includes but is not limited to the following:

    **A.** Defendants are excluding, denying services, and otherwise segregating Plaintiff from all of the benefits and services Defendants offer through their mobile apps as a result of their failure to modify their mobile application platform to allow access by assistive technology, such as, voice recognition, alternative input methods, and assistive touch functions. Which Plaintiff requires, to compete on an equal basis and maintain independence and self-sufficiency;

    **B.** Defendants are excluding, denying services, or otherwise segregating Plaintiff, because unlike individuals who are not disabled, individuals with disabilities are excluded from Defendants' services that enable individuals to locate the nearest Dollar Tree store through the mobile apps;

    **C.** Defendants are excluding, denying services, or otherwise segregating Plaintiff, because unlike individuals who are not disabled, individuals with disabilities are excluded from Defendants' services that enable individuals to register their emails or for a Value Seekers Club account to receive rewards and other exclusive benefits through the mobile apps;

**D.** Defendants are excluding, denying services, or otherwise segregating Plaintiff, because unlike individuals who are not disabled, individuals with disabilities are excluded from using the mobile app to access Defendants' services that enable individuals to establish a Value Seekers Club account and enjoy the benefits which include but are not limited to (1) members-only contest, (2) money-saving party ideas, (3) crafts, (4) recipes, and (5) exclusive product sneak peeks & more;

**E.** Defendants are excluding, denying services, or otherwise segregating Plaintiff, because unlike individuals who are not disabled, individuals with disabilities are excluded from Defendants' services that enable individuals to view the Dollar Tree ads & catalogs through the mobile apps;

**F.** Defendants are excluding, denying services, or otherwise segregating Plaintiff, because unlike individuals who are not disabled, individuals with disabilities are excluded from Defendants' services that enable individuals to view videos through the mobile apps;

**G.** Defendants are excluding, denying services, or otherwise segregating Plaintiff, because unlike individuals who are not disabled, individuals with disabilities are excluded from Defendants' services that enable individuals to get tips & ideas through the mobile apps;

**H.** Defendants are excluding, denying services, and otherwise segregating Plaintiff as a result of their failure to modify equipment, devices and/or other similar services. 28 *C.F.R.* § 36.303(b)(3)-(4).

102. The design of Defendants' mobile app impedes Plaintiff and others similarly situated from accessing the services, privileges and accommodations afforded patrons through the mobile app. The mobile app fails to integrate alternative access methods that allow a person with limited manual dexterity in their hands to access the information and navigate the mobile app.

103. The actions by the Defendants violate the following statutory and regulatory provisions of the ADA:

    **A.** 42 U.S.C. § 12182(a), because their actions deny Plaintiff full and equal enjoyment of Defendants' goods and services;

    **B.** 42 U.S.C. § 12182(b)(1)(A)(i), because Defendants' actions deny Plaintiff equal participation in goods and services offered by the Defendants;

    **C.** 42 U.S.C. § 12182(b)(1)(A)(ii) and (iii), because Plaintiff is provided both separate and unequal benefits of Defendants' goods and services;

    **D.** 42 U.S.C. § 12182(b)(1)(B), because the Defendants don't provide their goods and services in the most integrated setting appropriate;

    **E.** 28 C.F.R. 36.303(c), because Defendants have failed to provide auxiliary aids and services where necessary to ensure effective communication with the Plaintiff with a disability.

104. Plaintiff does not allege that there are a particular set of mandatory regulations for mobile applications that establish compliance standards as a matter of law. Plaintiff submits, consistent with the Department of Justice determinations, that in achieving such conformance and usability of mobile apps by individuals with disabilities, Defendants should rely upon the User Agent Accessibility Guidelines ("UAGG") 1.0, the Authorizing Tool Accessibility Guidelines ("ATAG") 2.0, and the Guidance on Applying WCAG 2.0 to Non-Web Information and

Communications Technologies ("WCAH2ICT"), published by the W3C, as well as guidance published by the W3C's Mobile Accessibility Task Force, as stated guidance published by the W3C's Mobile Accessibility Task Force.

105.    To date, the Defendants' discriminating actions continue.

106.    Dollar Tree, Inc., "owns" the Dollar Tree mobile application and its goods and services offered on the mobile app, and is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures.

107.    Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. She is entitled to have her reasonable attorney's fees, costs and expenses paid by the Defendants pursuant to 42 U.S.C. § 12205.

108.    Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal actions by Defendants.

**WHEREFORE**, premises considered, Lois Yates demands judgment against the Defendants on Counts One through Five and requests the following injunctive and declaratory relief:

1.    That the Court declare that the property leased and business operated by the Defendants as well as all Defendants' illegal actions described herein violate the Americans with Disabilities Act;

2.    That the Court enter an order enjoining the Defendants to alter the facility to make it accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA, to comply with 42 U.S.C. § 12182(b)(2)(A)(iv) and their implementing regulations, as stated in Count One;

3. That the Court enter an order, in accordance with Count Two, directing the Defendants to modify their policies, practices, and procedures both to remedy the numerous ADA violations outlined above, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii), and to permanently enjoin Defendants to make their business practices consistent with ADA Title III in the future;

4. That the Court enter an order directing the Defendants to provide Plaintiff full and equal access both to the Dollar Tree experience and to the use of the establishment, and further order Defendants to maintain the required accessible features at the establishment so that Plaintiff and others similarly situated are offered the experience that is offered to individuals who are not disabled, as stated in Count Three;

5. That the Court enjoin the Defendants to remediate Dollar Tree to the proper level of accessibility required for the design and construction of the facility for first occupancy, as stated in Count Four;

6. That the Court enter an Order directing the Defendants to evaluate and neutralize their policies, practices, and procedures towards persons with disabilities for such reasonable time so as to allow them to undertake and complete corrective procedures;

7. That the Court declare that the website and mobile applications operated by the Defendants herein violates the Americans with Disabilities Act;

8. That the Court enter an order directing the Defendants to provide Plaintiff full and equal access both to the Dollar Tree experience and to the use of the website and mobile applications, and further order Defendants to maintain the required accessible features of the website and mobile applications so that Plaintiff and others similarly situated are offered the same experience that is offered to members of the general

public without disabilities, as stated in Counts 5 and 6; 42 U.S.C. § 12182(a);

9.   That the Court enter an order requiring that Defendants adopt and implement a website accessibility policy and take the necessary actions to make their website accessible to the Plaintiff;

10.  That the Court enter an order requiring Defendants to place on their homepage a statement concerning their website accessibility policy; provide training to all their employees and associates who write or develop programs or code; and test their website quarterly to identify and repair any incidence of nonconformance;

11.  That the Court enter an order requiring Defendants to adopt and implement a mobile application accessibility policy and take the necessary actions to make their mobile application accessible to the Plaintiff;

12.  That the Court enter an order requiring Defendants to place on their mobile application a statement covering their mobile application accessibility policy; provide training to all their employees associates who write or develop the programs and code for the mobile application; and test the mobile application quarterly to identify and repair any incidents of non-conformance;

13.  That the Court award reasonable attorney's fees, costs, (including expert fees) and other expenses of suit, to Plaintiff; and

14.  That the Court award such other, further, and different relief as it deems necessary, just, and proper.

Respectfully Submitted, this the 25th Day of September, 2018.

/s/ _____
**Pshon Barrett**
MS- 2071
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
334.819.4030 p
334.521.3859 f
Pshon.Barrett@ADA-Firm.com
*Attorney for the Plaintiff*

/s/ _____
**Bradley D. McAdory**
MS BPR # 10545
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
334.819.4030 p
334.521.3859 f
BDM@ADA-Firm.com
*Attorney for the Plaintiff*

## CERTIFICATE OF SERVICE

This is to certify that I have this day filed with the Clerk of Court the aforementioned

Complaint for service of process by USPS mail or electronic mail, postage prepaid and properly

addressed this 25th day of September, 2018 to the following:

**DOLLAR TREE STORES, INC.**
C/O: Corporation Service Company
Attn.: Registered Agent
7716 Old Canton Road, Suite C
Madison, MS 39110

**DOLLAR TREE, INC.**
Attn.: Legal Department
500 Volvo Parkway
Chesapeake, VA 23320

/s/ _____
**Pshon Barrett**
MS- 2071
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
334.819.4030 p
334.521.3859 f
Pshon.Barrett@ADA-Firm.com
*Attorney for the Plaintiff*